# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEXT MILLENNIUM TELECOM CO., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN SIGNAL CORPORATION, <br><br> Defendant. | Case No. 20-CV-178-JPS <br><br> **ORDER** |

**1. INTRODUCTION**

Originally filed on February 5, 2020, this case has continued in its current pending status for more than three years. ECF No. 1. Even more pointedly, unlike vintage wine, this case has not gotten better with age. When last scheduled for a jury trial to begin on February 27, 2023, the Court held a final pretrial conference on February 14, 2023, noting at the outset that, "after 35 and a half years on the bench, I have not seen a case that is in such horrible shape to go to trial." ECF No. 133 at 2. For the reasons which follow, the Court is obliged to dismiss the case with prejudice and with costs for Plaintiff's failure to adequately prepare and effectively prosecute.

**2. DISCUSSION**

To be sure, Plaintiff's litigation strategy during the pretrial phase leaves much to be desired. At a status conference on July 14, 2021—over a year after the case was filed—Defendant informed the Court that "no discovery ha[d] been completed." ECF No. 25 at 1. With respect to later discovery motions, Defendant notified the Court that Plaintiff had

"chose[n] to involve the Court regarding . . . discovery requests without first satisfying its obligation to meet and confer with [Defendant] about the full scope of its purported concerns," in violation of the Court's trial scheduling order, the Eastern District of Wisconsin Local Rules, and the Federal Rules of Civil Procedure. ECF No. 36 at 2 (citing ECF No. 26 at 6).

On April 11, 2022, Defendant informed the Court that a motion filed by Plaintiff—ostensibly one made under Civil Local Rule 7(h)—exceeded its allotted three pages by over 20 pages. ECF No. 30.

At a conference held May 20, 2022, at which point the case had "already been pending for more than two years," the Court noted that, despite receiving various discovery-related motions, still "precious little ha[d] been done in the way of discovery." ECF No. 54 at 3.

On August 17, 2022, Plaintiff's local counsel, Attorney Timothy Edwards ("Edwards") filed notice of his withdrawal from the case. ECF No. 71. The following month, Edwards filed notice of a "contractual and statutory lien on the proceeds of any judgment or settlement" in the case due to "[c]ounsel for Plaintiff['s] . . . breach of its obligations" and "inten[t] to repudiate these obligations with respect to payment." ECF No. 83.

Additionally, Plaintiff's filings to the Court were regularly rife with formatting, grammatical, and spelling errors, demonstrating troubling inattention to detail and lack of preparation. Filings frequently switched between different fonts even within the same paragraph, demonstrating that material has been copied and pasted in verbatim from databases without meaningful review. Many of Plaintiff's filings create the impression that a first draft was prepared in haste and filed with the Court without any further consideration or having been proofread. *See, e.g.*, ECF No. 68 at 2

("Plaintiff and the Government of Saudi Arabia flew to Wisconsin to meet with Plaintiff paid Defendant in excess of §11,000,000.00 for 750 sirens.").

During the February 14, 2023 pretrial conference, the parties were advised that the Court was obliged to address a "host of issues with respect to the current status of this case." ECF No. 133 at 2. First, the Court noted that there remained "huge problems with the core facts of this case." *Id*. "I can tell you without mincing words," the Court warned, "that if the parties think they're going to get to a jury on the facts that are currently before the Court, [they're] sadly, sadly mistaken." *Id*. at 2–3. Over three years from the commencement of the case, the Court continued, there still "ha[d] been no serious effort at identifying exactly what the problem is with respect to the inoperability of the[] sirens." *Id*. at 3. "[U]ntil such time as these installations are either randomly or uniformly subject to testing by both [Plaintiff and Defendant], this case is not going to go to trial." *Id*. Nor, the Court stated, would the parties "go to trial with witnesses who do not appear in person." *Id*. The Court also recounted how "for whatever reason, [Plaintiff's] counsel withdrew and then filed a lien for proceeds for unpaid attorney's fees," and so "if this case is going to move forward, the Court is going to invoke general [L]ocal Rule 83(c)(3) and require that [Plaintiff] obtain local counsel . . . ." *Id*. at 3–4.

The Court also recounted some of its prior directives to the parties. "The Court was deadly serious back in May of last year when we held a status conference in this case . . . . [B]ut nothing, seriously, precious little has been accomplished since then." *Id*. at 4. "[W]e're not going to trial . . . . I can tell you without wincing an eye both sides would be laughed out of the courtroom by the jury." *Id*. "So against that backdrop, I'm going to leave it up to the parties to sit down and have a meaningful, and I underscore the

word 'meaningful,' conversation about how to get to the bottom of the facts of this case, and once we get some testing and once we have local counsel in the case, hopefully we can bring it to a conclusion." *Id*. "[I]f there is[] truly $11 million at stake here, somebody is going to have to get serious about representing one's interest. This case is being handled as if it were a thousand-dollar small claims case. And that's unacceptable in any court, particularly a federal court." *Id*. at 5.

Accordingly, the Court ordered Plaintiff's counsel to accomplish three (3) tasks and to report back to the Court in 90 days. The Court first ordered Plaintiff to "find people from the United States who can go over [to Saudi Arabia] to do the testing" of the sirens, and to "get the agreement of the Saudi government to do so." *Id*. at 6. Second, the Court ordered Plaintiff to "obtain local counsel" conversant in international law to help facilitate the testing of the sirens abroad. *Id*. at 4. Third, to the extent that Plaintiff intended to proffer foreign witnesses to testify at trial, that Plaintiff obtain visas for such witnesses to testify in person. *Id*. at 6.

Neither Defendant nor the Court heard anything from Plaintiff on its progress over the ensuing 11 weeks. Concerned by the lack of communication, particularly given the Court's directive that the parties have a meaningful conversation about the issues discussed, Defendant emailed Plaintiff's counsel a week before Plaintiff's report to the Court was due to follow up on Plaintiff's efforts at complying with the Court's order. ECF No. 137-1. "Because we have not heard from you since the February 14, 2023 Pretrial Conference, I wanted to contact you regarding a couple of items that [the Court] required of [Plaintiff] . . . ." *Id*. at 2. Defendant requested the "name and contact information for the lawyer" that Plaintiff had retained as local counsel. *Id*. Additionally, Defendant noted that, since

it "ha[d] not heard from [Plaintiff]," it "d[id] not know what [Plaintiff] ha[d] in mind with respect to [the inspections]," but that it would need "at least four weeks' lead time after it receives a letter of invitation from the Saudi Government" in order to arrange for inspection of the sirens. *Id*.

In response to this email, Plaintiff suggested a call later that afternoon. *Id*. The parties were unable to find an amenable time to speak over the following two days, and when Defendant suggested that "[e]mail may be more efficient and timely," Plaintiff did not respond. *Id*. at 1.

On May 14, 2023, Plaintiff filed its "plan pursuant to the Court's comments from the bench."[1] ECF No. 136. The substance of Plaintiff's plan, if much of it can indeed be described as substance, is contained within three pages. One full page of this "plan," while ostensibly reciting some of the relevant history of the case, more accurately proffers poorly disguised excuses and objections to the Court's characterizations of the case and its progress, again in poorly written form. *See id*. at 1 ("Defendant filed a 12(b)(6) motion and this Court claiming there is no contract, and this Court denied the Motion.").

First, Plaintiff represents that it has "found a few individuals" who have indicated a willingness to "travel to Saudi Arabia to examine the sirens," and Plaintiff writes that it expects such travel to occur "between the months of July and August 2023." *Id*. at 2. Plaintiff provides no further details, such as, for example, the names of these individuals, their

---

[1] Despite Plaintiff's repeated characterization of the Court's directive as mere "comments from the bench," the Court's directive is a clear bench order. In any event, the order is clearly repeated in written form at ECF No. 132.

credentials, or a travel plan. Plaintiff's representation is entirely uncorroborated, unaccompanied by records or copies of communications.[2]

With respect to the Court's order that foreign witnesses testify in person at trial, Plaintiff provides only that the "witnesses applied for the visa and are currently waiting for results from the embassy in Saudi Arabia." *Id.* at 3.

Lastly, with respect to obtaining local counsel, Plaintiff writes that it "contacted numerous attorneys in the Wisconsin area," all of whom "excused themselves and did not wish to appear as local counsel" upon learning "which Court this case was being litigated in." *Id*. at 3.[3] Plaintiff represents that it is "in the process of negotiating" with potential attorneys and expects "to wrap this process up by the time testing is done on the sirens." *Id*. at 3. Again, Plaintiff fails to accompany the representation with any corroborating materials.

This Court has the "inherent power to control its own docket." *Webber v. Eye Corp*., 721 F.2d 1067, 1068 (7th Cir. 1983). Included within that inherent power is the ability to dismiss an action *sua sponte* for failure to

---

[2]Defendant objects to Plaintiff's proposed action to the extent that it may be interpreted as an "untimely attempt to name an additional expert witness at this late stage in the litigation." ECF No. 137 at 3. Defendant "already disclosed its siren inspection experts in April 2022," *id*., but for reasons that are not entirely clear, Defendant has not been able to gain access to the sirens to have its own experts inspect the sirens. *See* ECF No. 74 at 30 ("How does the government have these things for seven years, complete control of them such that we can't even get access to inspect them, even though we've asked plaintiff.").

[3]Plaintiff's apparent inability to secure local counsel might well speak volumes about the merits—or rather, the lack thereof—of its case. Equally telling is the fact that a cursory review of the docket by a lawyer considering serving as local counsel may suggest a desire to avoid the fate of Plaintiff's prior local counsel: an unpaid bill, a lien, and little expectancy of payment for fees and expenses.

prosecute. *Id.*; *Daniels v. Brennan*, 887 F.2d 783, 785 (7th Cir. 1989). "Failure to prosecute under [Federal Rule of Civil Procedure 41(b)] does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by the regular machinery of the court. It is quite sufficient if he does nothing, knowing that until something is done there will be no trial." *Washington v. Walker*, 734 F.2d 1237, 1238 (7th Cir. 1984) (internal quotation omitted); *see also* Civ. L.R. 41(c) ("Whenever it appears to the Court that the plaintiff is not diligently prosecuting the action . . . the Court may enter an order of dismissal with or without prejudice."); Fed. R. Civ. P. 41(b) (authorizing dismissal for failure to comply with a court order).

The Court is unwilling to extend any additional time, consideration, or flexibility to Plaintiff. Plaintiff's counsel, as officers of the court, have an obligation to follow the directives of Rule 1—namely, that the federal rules be construed and employed "to secure the just, speedy, and inexpensive determination of every action and proceeding." And ultimately, "the duty of moving a case to trial is on the plaintiff and not on the court." *Washington*, 734 F.2d at 1238. Time and again the Court has expended countless hours and resources to get the case back on track and move it forward. It has provided clear guidance, repeatedly, on how to do so. Yet over three years have passed, and basic, fundamental questions at the core of the case remain—for example, in what specific respect the sirens are allegedly inoperable. *Cf. Webber,* 721 F.2d at 1070 (reversing dismissal with prejudice for failure to prosecute where "plaintiff had not been prodded by the trial court to expedite his case" and where there was "little in the record to support the contention that plaintiff had not facilitated expeditious movement toward trial") (internal quotation omitted). Enough is enough.

The Court will no longer allow an ill prepared and unmotivated party to squander both the Court's and the taxpayers' limited resources.

For over three years now, it has remained unclear "what[] the nature of the alleged defect with the[] sirens" is. *See* ECF No. 74 at 2. When asked this question, Plaintiff's counsel has repeatedly proffered vague and generalized responses: that the sirens are "defective because they didn't meet the Saudi Arabian government's specifications," that they simply "don't work" and "don't run," and that there were "many defective issues." *Id*. at 2–4.[4]

The circumstances of the contractual arrangement at issue appear to have been atypical from the outset of the parties' business relationship. The parties were "operating under [a] memorandum of understanding" rather than a formalized, final contractual document. *Id.* at 23. The sirens were not shipped all at once, fully assembled. Instead, their components were sent separately, over the course of approximately two years. *Id*. at 4, 7. And it was Plaintiff, not Defendant, who undertook installation of the sirens—an arrangement that was apparently a point of contention between the parties. *Id*. at 5. When asked, over two years following the filing of the complaint, when the sirens were "installed in their entirety," Plaintiff's counsel responded that he "d[idn't] know exactly when everything was fully built out," to which the court reminded him that he had a trial in two months and asked him how he could "not know this?" *Id.* at 7. Another lingering question is why $11 million was apparently paid for roughly 700 sirens that

---

[4]To these responses, Magistrate Judge William E. Duffin, at yet another discovery conference, asked: "What does that mean? What does that mean they don't work?" ECF No. 74 at 3. That question remains largely unanswered nearly a year later.

Page 8 of 10
Case 2:20-cv-00178-JPS   Filed 05/30/23   Page 8 of 10   Document 138

have allegedly never worked for over six years. Additionally, it remains unclear why the sirens were not "taken . . . down and sent . . . back" if they have simply been non-functioning for over six years. *Id*. at 43, 46. These core questions remain without satisfactory answers, again, more than three years after this case's inception.

At bottom, Plaintiff has not complied with the spirit of the Court's February 14, 2023 bench order. The Court ordered Plaintiff to file "an outline on how [it is] going to accomplish" the directives conveyed, and noted further that the case would be "dismissed for want of prosecution" if Plaintiff failed to do so. ECF No. 133 at 7. Orders in this Court say what they mean and mean what they say. Plaintiff does not appear to have meaningfully attempted to comply with any of the Court's directives. At no point following the February 14, 2023 conference did Plaintiff reach out to Defendant to engage in a genuine discussion about the issues raised, as instructed by the Court. Nor has Plaintiff, over the course of the past three years, made satisfactory, substantive progress toward adequate preparation of this case for trial.

### 3. CONCLUSION

"This case has been pending for soon to be a little over three years, and it is no closer to trial than it was at the time of our first status conference. And that's unacceptable." ECF No. 133 at 7. That remains true, and so, true to its word, the Court will dismiss the case for want of effective prosecution.

Accordingly,

**IT IS ORDERED** that this action be and the same is hereby **DISMISSED with prejudice and with costs**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge